NEWPORT TRIAL GROUP
Scott J. Ferrell (SBN 202091)
sferrell@trialnewport.com
Richard H. Hikida (SBN 196149)
rhikida@trialnewport.com
Victoria C. Knowles (SBN 277231)
vknowles@trialnewport.com
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Telephone: (949)706-6464
Facsimile: (949)706-6469

*Counsel for Plaintiff and all others similarly situated*

# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTHERN CALIFORNIA

| | |
|---|---|
| KALEB PATTERSON, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL UNION OF POLICE ASSOCIATIONS, AFL-CIO, a Florida trade union; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. **'13CV2698 JAH  JMA**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1.   VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAWS ("FAL"); Bus. & Prof. Code §17500 et seq.; and<br><br>2.  VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAWS ("UCL"); Bus. & Prof. Code §17200 et seq.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Kaleb Patterson on behalf of himself and all others similarly situated, alleges the following upon information and belief based upon investigation of counsel, except as to his own acts, which he alleges upon personal knowledge:

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

- 1 -
**CLASS ACTION COMPLAINT**

# PARTIES

1. Plaintiff Kaleb Patterson is a resident of California who donated money to Defendant International Union of Police Association, AFL-CIO. ("Defendant IUPA") in 2013. Plaintiff donated to Defendant IUPA after reviewing Defendant IUPA's website, http://iupa.org/, and relying on the representations contained therein.

2. Plaintiff is informed and believes, and thereon alleges, that Defendant IUPA is an IRS tax-exempt Florida trade union and member of the AFL-CIO. Defendant IUPA's mission statement is as follows: "The International Union of Police Associations is the only AFL-CIO union chartered exclusively for law enforcement and law enforcement support personnel. The AFL-CIO affiliation places I.U.P.A. in a position of strength within the labor movement. While I.U.P.A.'s officers, active and retired law enforcement officers, fight to improve the lives of their brothers and sisters in law enforcement, I.U.P.A. works to improve legislation that protects and affects public safety officers, as well as representing the needs of law enforcement officers and support personnel, whether that be for better equipment, more staff or a fair wage."[1]

3. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

4. At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (Defendant IUPA and DOE Defendants will hereafter collectively be referred to as "Defendant").

---

[1] *See* http://iupa.org/our-mission/ (last visited November 8, 2013).

## JURISDICTION AND VENUE

5. A Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005 because the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and is a class action in which some members of the class are citizens of different states than the Defendant. *See* 28 U.S.C. §1332(d)(2)(A).

6. This Court also has personal jurisdiction over Defendant because Defendant currently does business in this state.

7. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District and a substantial portion of the conduct complained of herein occurred in this District.

## FACTUAL ALLEGATIONS

8. Defendant IUPA, dubbed America's seventh worst charity by the Tampa Bay Times, the Center for Investigative Reporting, and Cable News Network (*i.e.*, CNN), is a trade union that claims to "works to improve legislation that protects and affects public safety officers, as well as representing the needs of law enforcement officers and support personnel, whether that be for better equipment, more staff or a fair wage."[2] Ultimately, Defendant IUPA claims to "improve the lives of public safety officers."[3] Defendant IUPA further claims to be "the only AFL-CIO union chartered exclusively for law enforcement and law enforcement support personnel."[4]

9. According to the Colorado secretary of state, Defendant IUPA claims its charity is aimed toward: "Strength through united action, guided by intelligence, is the hallmark of trade union organizations. Believing such unity essential for the mutual protection and advancement of the interests and general welfare of all law enforcement officers, we have formed the International Union of Police Officers: > to organize all law enforcement officers; > to secure just compensation for their services and equitable

---

[2] *Id.*
[3] *See* http://iupa.org/our-history/ (last visited November 8, 2013).
[4] *See* http://iupa.org/ (last visited November 8, 2013).

settlement of their grievances; > to promote the establishment of just and reasonable working conditions; > to increase the members' skill and efficiency; > to promote harmony between its members and their employers; > to encourage the formation of local unions, regional or state councils and provincial and foreign affiliations; > to foster improved health, retirement and death benefit programs; > to encourage improved methods of law enforcement, labor relations and labor/management cooperation, and; > to cultivate friendship and fellowship among its members."[5]

10. Defendant IUPA claims to use the charitable donations collected from the public, which are not tax deductible, to protect the interests of public safety officers through a variety of means including legislation reform aimed at protecting our law enforcement teams, support, equipment, and direct relief; however, *a mere fraction* of the donations received from concerned donors all over the country actually reaches the people for which Defendant IUPA supposedly operates.

11. Indeed, it has been recently reported that an average of **only .5% of the approximately $57 million** raised by Defendant IUPA over the last decade actually made it to people in need in direct cash aid.[6]

12. Instead of the millions of dollars raised in the name of protecting our law enforcements' interests, the vast majority of the millions raised goes to Defendant IUPA's operators and the for-profit companies Defendant IUPA hires to solicit donations, *i.e.*, corporate fundraisers. This means that **a mere fraction from every dollar raised actually goes to people in need**.[7] Defendant fails to disclose this fact to its donors. Indeed, "of the $57 million in donations given by the public over the past decade, more than 72 cents of every dollar was spent paying professional solicitors.

---

[5] *See* http://www.sos.state.co.us/biz/BusinessEntityCriteriaExt.do?resetTransTyp=Y (last visited September 3, 2013).
[6] "America's Worst Charities" is a report created by the collaboration of the Tampa Bay Times, the California-based Center for Investigative Reporting, and CNN. Available at www.tampabay.com/americas-worst-charities (last updated September 3, 2013).
[7] *Id.*

Less than half of one percent — about $28,000 a year — was spent on survivor benefits."[8]

13. Perhaps even more egregious, as reported by the Tampa Bay Times, the Center for Investigative Reporting, and CNN, "Recent campaigns have been even worse. In 2011, professional fundraisers kept about 92 percent of the $8.1 million raised. IUPA netted about $650,000. The group spent $25,000 on its cause that year, giving $15,000 in scholarships, $5,000 in death benefits and $5,000 to a handicapped children's foundation outside Sarasota."[9] In that same year, when Defendant spent only $25,000 on its own cause, Defendant IUPA's president, Samuel Cabral took home a $171,184 salary.[10]

14. Plaintiff reasonably relied on Defendant IUPA's rhetoric about donors' charitable gifts going to assist our security officer forces and their interests. After reviewing Defendant IUPA's website, Plaintiff made a donation, expecting that his contribution would directly aid security officers' interests through proactive legislation and direct aid.

15. Defendant fraudulently induces consumers and donors in making sizable charitable donations amounting to millions of dollars a year by misleading donors into believing that their donations, or *at least a majority thereof*, are directly aiding populations in need. In reality, Defendant uses the majority of donations to pay for-profit companies hired by Defendant to solicit *more* donations, *i.e.*, corporate fundraisers.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

16. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated as members of the class (referred to hereafter as the "Class") defined as follows:

///

---

[8] *Id.*
[9] *Id.*
[10] *Id.*

> *"All persons who are citizens or residents of California who donated money to Defendant International Union of Police Associations within the four years prior to the filing of the initial complaint in this action through the date of trial in this action."*

17. This action is brought and may be properly maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23(a)(1)-(4) and 23(b)(1)-(3). This action satisfies the numerosity, typicality, adequacy, predominance and superiority requirements of those provisions.

18. The Class is so numerous that the individual joinder of all of its members is impractical. *See* Fed. R. Civ. P. 23(a)(1). While the exact number and identities of Class members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes the Class includes tens of thousands of members. Plaintiff alleges that the Class may be ascertained by the records maintained by Defendant.

19. Common questions of fact and law exist as to all members of the Class which predominate over any questions affecting only individual members of the Class. *See* Fed. R. Civ. P. 23(a)(2). These common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to, the following:

    (a) Whether Defendant's advertising, marketing and solicitation is false or misleading;

    (b) Whether Defendant has misled donors to profit therefrom;

    (c) Whether Defendant's conduct is "unlawful" under Bus. & Prof. Code Section 17200;

    (d) Whether Defendant's conduct is "unfair" under Bus. & Prof. Code Section 17200;

///

(e) Whether Defendant's conduct is "fraudulent" under Bus. & Prof. Code Section 17200;

(f) Whether, as a result of Defendant's misconduct, Plaintiff and the Class are entitled to damages, restitution, equitable relief and other relief, and the amount and nature of such relief.

20.  Plaintiff's claims are typical of the claims of the members of the Class. *See* Fed. R. Civ. P. 23(a)(3).  Plaintiff and all members of the Class have sustained injury and are facing irreparable harm arising out of Defendant's common course of conduct as complained of herein.  The losses of each member of the Class were caused directly by Defendant's wrongful conduct as alleged herein.

21.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  *See* Fed. R. Civ. P. 23(a)(4). Plaintiff has retained attorneys experienced in the prosecution of class actions, including complex consumer and mass tort litigation.

22.  A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable.  *See* Fed. R. Civ. P. 23(b)(3).  Even if every Class member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.  By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

23.  The prosecution of separate actions by thousands of individual Class members would create the risk of inconsistent or varying adjudications with respect to,

among other things, the need for and the nature of proper notice, which Defendant must provide to all Class members. *See* Fed. R. Civ. P. 23(b)(1)(A).

24. The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests. *See* Fed. R. Civ. P. 23(b)(1)(B).

25. Defendant has acted or refused to act in respects generally applicable to the Class, thereby making appropriate final injunctive relief with regard to the members of the Class as a whole. *See* Fed. R. Civ. P. 23(b)(2).

## FIRST CAUSE OF ACTION
## Business & Professions Code § 17500
## (Violation of the False Advertising Law)
## (By Plaintiff and the Class Against All Defendants)

26. Plaintiff hereby incorporates the preceding paragraphs above as if fully set forth herein.

27. California Business and Professions Code (the "Code") § 17500 provides that "[i]t is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of . . . personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseiminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

///

28.     Defendant intended to dispose of property, perform services, or induce the public to enter into an obligation relating thereto, and misled consumers by making untrue or misleading statements and failing to disclose what is required as stated in the Code, as alleged above, with knowledge that the statements made were untrue or misleading or which, by the exercise of reasonable care, should be known to be untrue or misleading.

29.     As a direct and proximate result of Defendant's misleading and false advertising, marketing, and solicitation, Plaintiff and the members of the Class have each suffered an injury in fact and have lost money or property.

30.     The misleading and false advertising, marketing, and solicitation described herein presents a continuing threat to Plaintiff and the Class in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.

## SECOND CAUSE OF ACTION
## Business & Professions Code § 17200, et seq.
## (Violation of the Unfair Competition Law)
### (By Plaintiff and the Class Against All Defendants)

31.     Plaintiff hereby incorporates the preceding paragraphs above as if fully set forth herein.

32.     California Business and Professions Code § 17200, *et seq.*, (the "Unfair Competition Law" or "UCL") authorizes private lawsuits to enjoin acts of "unfair competition" which includes any unlawful, unfair, or fraudulent business practice.

33.     Government Code § 12599.6 deems it unlawful to "misrepresent the purpose of the charitable organization or the nature or purpose or beneficiary of a solicitation."  Cal. Gov't Code § 12599.6(a).  Further, "A misrepresentation may be accomplished by words or conduct or failure to disclose a material fact."  *Id.* "**Regardless of injury**, the following acts and practices are prohibited in the planning,

conduct, or execution of any solicitation or charitable sales promotion:

> "(1) Operating in violation of, or failing to comply with, any of the requirements of this act…
>
> (2) Using any unfair or deceptive acts or practices or engaging in any fraudulent conduct that **creates a likelihood of confusion or misunderstanding**.
>
> (3) Using any name, symbol, emblem, statement, or other material **stating, suggesting, or implying to a reasonable person that the contribution is to or for the benefit of a particular charitable organization when that is not the fact**.
>
> (4) Misrepresenting or misleading anyone in any manner to believe that the person on whose behalf a solicitation or charitable sales promotion is being conducted is a charitable organization or **that the proceeds of the solicitation or charitable sales promotion will be used for charitable purposes when that is not the fact**.
>
> . . .
>
> (8) Representing directly or by implication that a charitable organization will receive an amount greater than the actual net proceeds reasonably estimated to be retained by the charity for its use."

Cal. Gov't Code § 12599.6(f)(1)-(4), (8) (emphasis added).

34. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair or fraudulent business practices—but only that such practices occurred.

35. The material misrepresentations, concealment, and non-disclosures by Defendant as part of its marketing, solicitation and advertising for its charitable practices constitutes unlawful, unfair, and fraudulent business practices prohibited by the UCL. Indeed, Defendant's conduct violates Government Code § 12599.6 as detailed above as Defendant: (1) misrepresented the purpose of the International Union of Police Associations as well as the nature, purpose, and beneficiary of their solicitation; (2) created an extreme likelihood of, and did cause, confusion amongst

Plaintiff and the Class about the nature, purpose, and beneficiaries of the International Union of Police Associations; (3) made material statements suggesting and implying to reasonable persons, *i.e.*, Plaintiff and the Class, that their contributions were for the benefit of a particular charitable organization when that is not the fact; (4) made material misrepresentations that the proceeds of the solicitations would be used for charitable purposes when that was not the fact; and (5) represented directly or by implication that the International Union of Police Associations will receive an amount greater than the actual net proceeds reasonably estimated to be retained by the charity for its use.

36.     In carrying out such marketing, advertising, and solicitation, Defendant has additionally violated the False Advertising Law, and/or common law duties, which necessarily violates the UCL.  Defendant's business practices alleged herein, therefore, are unlawful within the meaning of the UCL.

37.     The harm to Plaintiff and members of the public, the Class, outweighs the utility of Defendant's practices and, consequently, Defendant's practices, as set forth fully above, constitute an unfair business act or practice within the meaning of the UCL.

38.     Defendant's practices are additionally unfair because they have caused Plaintiff and the Class substantial injury, which is not outweighed by any countervailing limited benefits to consumers, and is not an injury the consumers themselves could have reasonably avoided.

39.     Defendant's practices, as set forth above, have misled the general public in the past and will mislead the general public in the future.  Consequently, Defendant's practices constitute an unlawful, unfair, or fraudulent business practice within the meaning of the UCL.

40.     Pursuant to California Business and Professions Code § 17204, an action for unfair competition may be brought by any "person . . . who has suffered injury in fact and has lost money or property as a result of such unfair competition."  Defendant's wrongful misrepresentations and omissions have directly and seriously

injured Plaintiff and the Class by causing them to pay to Defendant IUPA what they thought were charitable contributions because they relied on the false and misleading marketing, solicitation and advertising statements of Defendant IUPA.

41. The unlawful, unfair, and fraudulent business practices of Defendant are ongoing and present a continuing threat to members of the public because they will continue to be misled by Defendant's false and misleading marketing, advertising, and solicitation statements.

42. Pursuant to the UCL, Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease this unfair competition, as well as disgorgement and restitution to Plaintiff and the Class of all of Defendant's revenues associated with Defendant's unfair competition, or such portion of those revenues as the Court may find equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

1. For preliminary and permanent injunctive relief enjoining Defendant, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unfair, unlawful and/or fraudulent business practices alleged above and that may yet be discovered in the prosecution of this action;

2. For certification of the putative class;

3. For restitution and disgorgement of all money or property wrongfully obtained by Defendant by means of their herein-alleged unlawful, unfair, and fraudulent business practices;

4. For an accounting by Defendant for any and all profits derived by Defendant from its herein-alleged unlawful, unfair, and/or fraudulent conduct and/or business practices;

5. An award of statutory damages according to proof;

6. An award of general damages according to proof;

7. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, Code of Civil Procedure §1021.5 and the common law private attorney general doctrine;

9. For costs of suit; and

10. For such other and further relief as the Court deems just and proper.

Dated: November 8, 2013

NEWPORT TRIAL GROUP

By: _____
SCOTT J. FERRELL
RICHARD H. HIKIDA
VICTORIA C. KNOWLES
*Counsel for Plaintiff and all others similarly situated*